979 So.2d 1232 (2008)
STATE of Florida, Appellant,
v.
Dominick GATTO, Appellee.
No. 4D07-337.
District Court of Appeal of Florida, Fourth District.
April 30, 2008.
Bill McCollum, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellant.
*1233 Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellee.
STEVENSON, J.
Dominick Gatto entered open no contest pleas to felony driving with a suspended license (lower court case number 06-13469), and grand theft and engaging in business as an unlicensed contractor during a state of emergency (lower court case number 06-14847). The lowest permissible sentence in both cases, as calculated on Gatto's score sheets, was 28.65 months incarceration. Gatto sought, and was granted, a downward departure sentence based upon Florida Statutes section 921.0026(2)(d), (2006) (need for specialized treatment unavailable in prison setting). The State has appealed, arguing that the evidence before the trial court was insufficient to permit the departure. We agree and reverse the departure sentence.
Section 921.0026(2)(d) permits a trial court to impose a sentence that is below the lowest permissible sentence where "[t]he defendant requires specialized treatment for a mental disorder that is unrelated to substance abuse or addiction . . ., and the defendant is amenable to treatment." If a departure is to be permitted on such ground, the defendant must also establish, by a preponderance of the evidence, that the Department of Corrections cannot provide the required "specialized treatment." See, e.g., State v. Green, 971 So.2d 146, 148 (Fla. 4th DCA 2007), review denied, No. SC07-2421, ___ So.2d ___, 2008 WL 1001603 (Fla. Apr. 10, 2008); State v. Green, 890 So.2d 1283, 1286 (Fla. 2d DCA 2005). A trial court's determination that the defendant has satisfied his burden of establishing the facts required for departure is a "`mixed question of law and fact and will be sustained on review if the court applied the right rule of law and if competent substantial evidence supports its ruling.'" Green, 971 So.2d at 148 (quoting Staffney v. State, 826 So.2d 509, 511 (Fla. 4th DCA 2002)).
In support of a downward departure sentence, Gatto offered the testimony of Dr. Michael Brannon. Dr. Brannon testified that after meeting with Gatto, performing a mental status exam and clinical interview, and reviewing medical records, he was of the opinion that Gatto met the criteria for Major Depressive Order and suffered from long-term polysubstance abuse. Brannon testified that the commission of Gatto's crimes was more likely tied to his substance abuse than his mood disorder and that he believed Gatto would benefit from being placed into a dual diagnosis program. The doctor opined that the "best strategy" would be a "residential substance rehabilitation for concurrent medicine for his depression" as Gatto was too high functioning for a "standard dual disorder program." He also testified that "the appropriate strategy would be the medication would be adjunct with his diagnosed mood disorder going back to 2003, but primarily dealing with what brings him into contact with the legal system, the most of which appears to be his substance problem."
When asked whether Gatto could receive the treatment he required in prison, Dr. Brannon testified as follows:
DOCTOR: He certainly could get some treatment in a prison setting. He could get  NA groups volunteers come in three or four times a week. He could get monthly medication management. He could get some treatment, which is better than no treatment.
. . . .
COURT: I'm not sure I quite understood your recommendations. When *1234 you say he's high functioning and should go into what type of a program?
DOCTOR: Well, there's two strategies for people with dual diagnosis conditions. One is a standard dual diagnosis program which primarily has individuals that are lower functioning in terms of their ability to relate, maybe they're hallucinating or have delusions. His problem is primarily mood. Most of that mood disturbance appears to be depression. He appears to function pretty well. He was functioning better last night from the first time I saw him.
So based upon that, his primary problem that seems to cause problems with the law is his substance abuse problem. Most substance abuse programs allow for concurrent care for psychiatric case management services. I think that's the most efficacious intervention for him.
We acknowledge the difficulty that this case presented to the trial court because of the close relationship between Gatto's mood disorder and his substance abuse. Gatto had been prescribed an anti-depressant and a mood stabilizer for his depression disorder in 2003, but had stopped taking his medication:
PROSECUTOR: If a person requires medication for whatever reason and doesn't take it, is that more likely to provoke worsening or deterioration of the condition?
DOCTOR: Yes. And oftentimes people who have substance abuse disorder what they do is they self-medicate with substances. Mood disorders  especially if there's any mania involved, which is what the jail psychiatrist had diagnosed, is an additional reason why they stop taking their psychotropic medication. Oftentimes it's to recreate the mania that they don't get when they're on their medication. So that's two reasons why he may not have taken medication. The other may be lack of access to medication.
Dr. Brannon's testimony was insufficient to establish that Gatto could not receive the required "specialized treatment" for his mental disorder in prison. At the end of the day, what Dr. Brannon testified to was that Gatto required a residential substance abuse program for his substance abuse and medication for his depression. The doctor acknowledged that Gatto could receive substance abuse treatment and medication for depression in prison and never testified that Gatto required counseling or other types of therapies for his depression and/or mood disorder that were not available in prison. Further, the statute does not allow a downward departure for specialized treatment which Gatto might require for his substance abuse diagnosis. See § 921.0026(2)(d), Fla. Stat. ("The defendant requires specialized treatment for a mental disorder that is unrelated to substance abuse or addiction. . . ."). At most, Dr. Brannon's testimony is susceptible to an interpretation that he believed Gatto might receive better or more treatment outside of a prison setting, but not that treatment was unavailable through DOC. We thus reverse the downward departure sentence and remand the case to the trial court for the imposition of a sentence that is not less than the lowest permissible sentence calculated under Gatto's Criminal Punishment Code score sheet. See State v. Bell, 854 So.2d 686 (Fla. 5th DCA 2003).
Reversed and Remanded.
KLEIN, J., concurs.
TAYLOR, J., dissents with opinion.
Taylor, J., dissenting.
I respectfully disagree with the majority's decision to reverse the downward departure *1235 sentence imposed by the trial court. The psychologist's testimony regarding the defendant's need for specialized treatment for his mental disorder, apart from any substance abuse counseling, and the inadequacy or unavailability of appropriate treatment for his condition within the prison system, was sufficient to support the trial court's decision to impose a downward departure sentence. I would therefore affirm the sentence.