992 So.2d 328 (2008)
Dwayne HOLMES a/k/a Frank Peterson, Appellant/Cross-Appellee,
v.
The STATE of Florida, Appellee/Cross-Appellant.
No. 3D06-2940.
District Court of Appeal of Florida, Third District.
October 1, 2008.
Bennett H. Brummer, Public Defender, and Marti Rothenberg, Assistant Public Defender, for appellant/cross-appellee.
Bill McCollum, Attorney General, and Rolando A. Soler, Assistant Attorney General, for appellee/cross-appellant.
Before WELLS, SUAREZ, and ROTHENBERG, JJ.
WELLS, Judge.
Dwayne Holmes a/k/a Frank Peterson appeals from convictions and sentences on two counts of first degree murder and a single count of armed burglary of an occupied dwelling, claiming that the trial court erred in refusing to compel a subpoenaed witness to appear at trial and in denying a motion for continuance to accomplish this end and in rejecting his argument that the evidence was legally insufficient to send this case to the jury. We reject both arguments and affirm.
We reject Holmes' first argument regarding a witness subpoenaed for trial because although Holmes knew almost one week before the trial started that he could not locate this witness, he waited until the State had rested its case to ask the trial court to enforce the subpoena and, necessarily, to continue trial. We find no abuse of discretion in the trial court's denial of these requests. See Geralds v. State, 674 So.2d 96, 99 (Fla.1996) (concluding that the trial court did not abuse its discretion in denying a motion for continuance to secure appearance of a witness and that "[t]o prevail on his motion for continuance, the *329 defendant was required to show: (1) prior due diligence to obtain the witness's presence; (2) that substantially favorable testimony would have been forthcoming; (3) that the witness was available and willing to testify; and (4) that the denial of the continuance caused material prejudice. United States v. O'Neill, 767 F.2d 780, 784 (11th Cir.1985); see also Robinson v. State, 561 So.2d 419, 421 (Fla. 1st DCA 1990); Goree v. State, 411 So.2d 1352, 1353 (Fla. 3d DCA 1982)"); Davenport v. State, 914 So.2d 1004, 1005 (Fla. 3d DCA 2005) (finding no abuse of discretion in refusing to grant a continuance to secure appearance of a witness during trial when the witness had failed to appear as noticed at the start of the trial); but see Robinson, 561 So.2d at 421 (finding trial court abused its discretion by refusing to continue trial to allow time to secure appearance of a witness where counsel immediately moved for a continuance before trial when the witness failed to appear in response to a subpoena).
We also reject the argument that the evidence was legally insufficient to send this case to the jury. Although Holmes initially told investigators that his blood would not be found at the scene of the two murders at issue here, DNA testing confirmed the presence of his blood throughout the home where the murders occurred. His blood was found in the kitchen, the living room, a hallway, and leading into the bedroom where the victims were discovered. It was also found on a sneaker, the laces of which were used to tie the victims up, a pillow, used to muffle the sound of a gunshot, and on one of the victim's pants. While initially denying that his blood would be found in these places, once his blood was found, Holmes claimed that its presence was to be expected as he worked at the home where the bodies were found and because he was such a heavy drug user, he had constant nosebleeds and dripped blood everywhere. Thus, because he was a supplier of drugs sold from the victims' home, a hangout known as the Mango Lounge, the presence of his blood throughout the home was, according to Holmes, not indicative of participation in this crime. Holmes also explained the presence of his blood on the sneaker, the pillow and the pants by testifying that on the night in question, he had helped to put to bed one of the victims, who was incapacitated, and dripped blood on these items while doing so.
Holmes also assured investigators that none of the victims' blood would be found on his clothing. But again after blood from one of the victims was identified from a spot on Holmes' shoe, Holmes explained that he had helped that victim inject heroin and cocaine into that victim's veins and that at times, blood would either squirt or drip onto him. However, the medical examiner's report for this victim noted no intravenous needle marks on this victim.
Holmes' explanations for both his presence and the presence of his blood on so many items directly tied to these murders, however, were contradicted by the testimony that (1) approximately one month before the murders, one of the victims had "fired" Holmes and had precluded him from coming onto the Mango Lounge premises; (2) after Holmes was "fired" he was not observed on Mango Lounge property again; and, (3) after he was "fired" by one of the victims, he threatened to "get" and "kill" one of the victims because he had been fired.
All of this conflicting evidence, even if viewed as wholly circumstantial, was we believe sufficient to send this case to the jury. See Darling v. State, 808 So.2d 145, 156 (Fla.2002) ("It is the trial judge's proper task to review the evidence to determine the presence or absence of competent *330 evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. The state is not required to `rebut conclusively every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt." (quoting State v. Law, 559 So.2d 187, 188-89 (Fla.1989))) (citations and footnote omitted); Orme v. State, 677 So.2d 258, 262 (Fla.1996) ("In sum, the sole function of the trial court on motion for directed verdict in a circumstantial-evidence case is to determine whether there is prima facie inconsistency between (a) the evidence, viewed in the light most favorable to the State and (b) the defense theory or theories. If there is such inconsistency, then the question is for the finder of fact to resolve. The trial court's finding in this regard will be reversed on appeal only where unsupported by competent substantial evidence.").
We therefore affirm the convictions and sentences at issue here. In light of our resolution of these issues, we decline to address the issue raised by the State on cross-appeal.
Affirmed.