77 So.3d 677 (2011)
The STATE of Florida, Appellant,
v.
Gerald MASSINGILL and Elizabeth Torres, Appellees.
Nos. 3D10-427, 10-426.
District Court of Appeal of Florida, Third District.
November 2, 2011.
Rehearing Denied December 2, 2011.
*678 Pamela Jo Bondi, Attorney General, and Jill D. Kramer, Assistant Attorney General, for appellant.
Carlos J. Martinez, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellees.
Before SHEPHERD, ROTHENBERG, and SALTER, JJ.
SALTER, J.
The State of Florida appeals orders granting downward departures from the sentencing guidelines for two co-defendants. We reverse. In the case of defendant and appellee Elizabeth Torres,[1] the State was not afforded a reasonable opportunity to depose Ms. Torres' expert witness on the primary issues presented by the defense motion (impaired capacity to appreciate the criminal nature of her conduct or to conform that conduct to the requirements of the law, and her need for specialized treatment for certain mental disorders) and to present a State psychiatric expert in response. Other findings in the order were not pertinent to the downward departure statutory provisions and were not supported by competent substantial evidence.
In the case of defendant Gerald Massingill,[2] there was no record evidence to support findings that he was a "relatively minor participant in the criminal conduct," that the offense was committed in an unsophisticated manner, or that it was an "isolated incident" for which he showed remorse.

The Charges and Course of Proceedings
The defendants were charged with aggravated abuse and neglect of Ms. Torres' uncle,[3] Louis Makrez, under section 825.102(2), Florida Statutes (2007). The elderly victim, the two defendants, and Ms. Torres' son lived together in Miami in a home owned by the victim. The uncontroverted facts[4] are that Ms. Torres obtained from the victim a power of attorney at some time in April 2007 for the purpose of selling the victim's residence. Using the power of attorney, Ms. Torres sold the home in June 2007 and placed approximately $126,000 in net proceeds in a joint bank account in her name and the victim's name. The sales price was substantially below the home's market value. Ms. Torres used approximately $90,000 of the net proceeds for shopping and living expenses before the remaining balance was frozen by a court. In October 2007 a workman *679 saw the victim in an emaciated condition, lying in his own waste, and called fire/rescue. The victim lived another two months before passing away.
After the aggravated elder abuse/neglect charges were brought by the State, the defense moved for the appointment of a psychologist or psychiatrist to conduct a competency and psychological/psychiatric evaluation of the defendants. The motion was granted. Following the evaluations, in April 2009 the defendants moved for downward departures from the sentencing guidelines. In December 2009, the defendants moved for and obtained an order authorizing retention of an expert for downward departure examinations. The case itself was scheduled for trial commencing January 25, 2010. On January 8, 2010, Dr. Sanford Jacobson conducted a further psychiatric evaluation of Ms. Torres for purposes of the pending downward departure motion.[5] Dr. Jacobson prepared a report the following day, and the report appears to have been served on the State with a motion for continuance on January 20, 2010.
The downward departure hearing was conducted on January 26, 2010. Although the State was afforded a brief opportunity to discuss Dr. Jacobson's report with him "out in the hall" before the hearing, there was no pretrial deposition, no 30-day disclosure regarding Dr. Jacobson on a pretrial witness list, and no reasonable opportunity to retain and prepare an opposing mental health expert. At the outset of, and repeatedly throughout, the downward departure hearing, the State raised these points and renewed the State's request for an opportunity to retain an opposing expert.
The defense argued that the State had already had nine months of notice that Dr. Jacobson had been retained as Ms. Torres' expert, and the trial court agreed. In fact, however, the State had no evaluations from Dr. Jacobson regarding the specific downward departure mitigators until a few days before the hearing. Earlier motions and orders authorized Dr. Jacobson's retention but did not disclose that a downward departure evaluation had actually taken place, that a report had issued, or that the defense actually intended to call Dr. Jacobson as a witness until it was too late for a State witness to prepare for the hearing.

AnalysisMr. Massingill
At oral argument, counsel for both defendants candidly acknowledged that the record did not establish that "the offense was committed in an unsophisticated manner" for purposes of section 921.0026(2)(j). Rather, Mr. Massingill relies upon mitigation under section 921.0026(2)(b), the "defendant was an accomplice to the offense and was a relatively minor participant in the criminal conduct." Mr. Massingill did not, however, provide competent substantial evidence to support such a ruling. See State v. Ford, 48 So.3d 948 (Fla. 3d DCA 2010). The limited State proffers allowed and considered by the trial court did not satisfy this requirement. As a result, the downward departure order must be reversed.

AnalysisMs. Torres
In Ms. Torres' case, the downward departure order included the finding regarding commission in an "unsophisticated manner," now abandoned by the defense. However, the order also included findings regarding two other statutory mitigators: "the capacity of the defendant to appreciate the criminal nature of the conduct or to *680 conform that conduct to the requirements of the law was substantially impaired," § 921.0026(2)(c), and "the defendant suffers from adjustment disorder, dysthymic disorder, and possibly a mood disorder, not related to substance abuse or addiction, and requires and is amenable to treatment," § 921.0026(2)(d).[6] As to each of these findings, the State is correct that it was not afforded adequate notice and an opportunity to prepare its own expert to meet Dr. Jacobson's report and testimony.
The State argues that the downward departure hearing is subject to Florida Rule of Criminal Procedure 3.216(f):
(f) Court-Ordered Experts for Other Mental Health Defenses. If the notice to rely on any mental health defense other than insanity indicates that the defendant will rely on the testimony of an expert who has examined the defendant, the court shall upon motion of the state order the defendant be examined by one qualified expert for the state as to any mental health defense raised by the defendant.
Emphasis supplied.
Ms. Torres argues first, that this provision of the rule is inapplicable to a downward departure hearing, and second, that "the State did nothing for nine months after being placed on notice that Ms. Torres' mental condition would be raised as a ground for her motion to depart downward from the guidelines." While it is true that Rule 3.216 is in part V of the Rules of Criminal Procedure, "Pretrial Motions and Defenses," and sentencing is within part XIV of the Rules, "Sentence," the hearing in this instance was a pretrial hearing conducted to facilitate plea negotiations a few days before the scheduled trial. Although we conclude that Rule 3.216(f) does govern the appointment of an opposing expert for downward departure issues involving mental health,[7] the requirement for reasonable notice and an opportunity to present an opposing expert witness is also a matter of basic due process. And the State did not have "nine months" of prior notice regarding the defendants' evidence for mitigation. That evidence was not available to the defense until January 9, 2010 and was not disclosed to the State with reasonable advance notice and a fair opportunity to address it.
Regarding the finding for mitigation based on "specialized treatment for a mental disorder" under section 921.0026(2)(d), we recently reaffirmed the further requirement for the defense to "establish, by a preponderance of the evidence, that the Department of Corrections cannot provide the required `specialized treatment.'" Ford, 48 So.3d at 950 (State v. Gatto, 979 So.2d 1232, 1233 (Fla. 4th DCA 2008) (emphasis supplied)). No such finding was made in this case.

Conclusion
Although both downward departure orders were correct that the defendants had no prior criminal history, that fact is not a statutory basis for a downward departure. Here, the appalling conditions in which the victim was found (while ostensibly in the care of the defendants) and the apparent planning, intention, and guile involved in misapplying the elderly victim's interest in his residence for very substantial pecuniary gain, support the State's *681 objections and motion for time to prepare an opposing expert witness.
Each order is reversed and the cases are remanded for further proceedings.
ROTHENBERG, J., concurs.
SHEPHERD, J., concurring in part, and dissenting in part.
I concur in the reversal of the order granting a downward departure to Gerald Massingill. Not only was a motion never filed by Massingill asking for a departure sentence, but also Massingill provided no evidence to support the order that was entered.[8]
I would affirm the order granting a downward departure to Elizabeth Torres. The majority finds the State was sandbagged by the defense in its ability to readily oppose Ms. Torres' Motion for Downward Departure. The majority makes light of the fact that Ms. Torres' motion was filed nine months before the hearing on the motion. It fails to mention the motion expressly refers to Dr. Jacobson, his opinion that long-term incarceration of Ms. Torres "would cause her to further deteriorate from her current condition," and, even then, "that she [should] be referred to outpatient treatment." The majority states the defense's formal motion to retain Dr. Jacobson was filed in "December, 2009" and that "[t]he case itself was scheduled for trial commencing on January 25, 2010," but fails to state the motion was filed on December 2nd (and granted on December 4th), almost two monthsa lifetime in the world of criminal trial practicebefore the hearing. Furthermore, the motion to retain Dr. Jacobson stated, and the order granting the motion expressly reaffirmed, it was Ms. Torres' intent "to retain Dr. Jacobson to testify at any hearing before the Court regarding said Downward Departure."
The assistant state attorney first expressed her concern about being ready to confront Dr. Jacobson, or rebut his testimony, at the evidentiary hearing on Ms. Torres' Motion for Downward Departure, held in place of Ms. Torres' trial on Monday, January 25, after Dr. Jacobson was sworn as a witness. The assistant state attorney stated:
ASSISTANT STATE ATTORNEY: Judge, before Dr. Jacobson testifies, he was never listed as a witness for the defense. While I have never had an opportunity to depose [Dr. Jacobson], I did have an opportunity to speak to him in the hallway. I understand the court is willing to listen to Dr. Jacobson's testimony this morning. What I am requesting Judge, is that we have our own expert [and] be allowed to evaluate Mr[s]. Torres for the same issue. I think that based upon what Dr. Jacobson did state to me in the hallway, I think the only equitable solution here is to have the State's expert because there are issues that I can use as far as presenting evidence to the court.
THE COURT: Okay. So you think that the State is entitled to take theto have an expert examine the defendant?

*682 ASSISTANT STATE ATTORNEY: Yes, Judge.
THE COURT: Well, interesting. We will take that up after we finish Dr. Jacobson.
DEFENSE COUNSEL: Judge, I filed this motion for downward departure in April of 2009.
(emphasis added).
The record reflects, however, that the State did not press the issue after Dr. Jacobson completed his testimony. Instead, counsel for Ms. Torres rested, and the parties and the court engaged in a lengthy colloquy, greater in length than the earlier testimony of Dr. Jacobson, during which the court on two separate occasions candidly indicated it was inclined to grant a downward departure. In the first, the court asked counsel for the State:
Why is it thatI find I think you would agree that often in cases here in this building with no priors, when it is not a willful act, it is not unusual to come off the guidelines and not go to state prison or offer some type of probation and treatment.
What do you think about the case or the circumstances that have made the State feel strongly that this is a prison case, that these people should go to prison despite their deficit that they have, I guess in their functioning, for lack of a better words?
A few minutes later, the court again addressed counsel for the State:
Tell me why you are so opposed to thesewhy are you so insistent these people go to prison? That is really what I want to know, okay? Obviously they could have done more, maybe could have done more. This was not a good thing what happened. These conditions are horrific, they are awful, terrible and it happened but why should these people be locked up in prison at about $35,000 a year to me and you and everybody in here as opposed to putting them on probation, make them go through some intensive, you know, treatment, therapy, whatever?
Why is it so important that prison and not therapy[.] That is what I want to hear.
It was not until thirty-three transcript pages later, with her plight showing no signs of improving, that counsel for the State finally made another request to obtain a mental health expert:
ASSISTANT STATE ATTORNEY: Judge, if the court is inclined to depart from the guidelines I would be respectfully requesting to reset to have my own psychologist evaluate Elizabeth Torres.
(emphasis added). Counsel's request is, of course, nothing more than a common, ordinary motion for continuance. The trial court was well within its discretion to deny the request. See Bouie v. State, 559 So.2d 1113, 1114 (Fla.1990); Wade v. State, 30 So.3d 640, 642 (Fla. 4th DCA 2010); Holmes v. State, 992 So.2d 328, 328-29 (Fla. 3d DCA 2008).
However, in what surely will be a surprise to this state's criminal defense bar (and prosecutors around the state as well for whom the court's pronouncement likely will beget its own train of unintended consequences), the majority reverses the downward departure findings in this case on the basis that Florida Rule of Criminal Procedure 3.216 applies to downward departure hearings, obligating a defendant to disclose the name of any mental health professional he intends to call at such a hearing thirty days before the date scheduled for the hearing, see Maj. op. at p. 4, and affording the State an unconditional right, upon motion made, to obtain a rebuttal mental health expert witness to examine the defendant and testify. The majority *683 misunderstands the purpose of the rule and misreads it as well.
The first hint of the flaw in the court's reasoning appears from the title of the rule itself, "Insanity at Time of Offense or Probation or Community Control Violation: Notice and Appointment of Expert." Adopted in 1980, see In re Rules of Criminal Procedure, 389 So.2d 610, 624-626 (Fla.1980), Rule 3.216 was added to the Florida Rules of Criminal Procedure, based upon this Court's urging in Pouncy v. State, 353 So.2d 640 (Fla. 3d DCA 1977), to regularize the procedure to be used by a defendant who intends to assert the defense of insanity or incompetency to proceed at trial, or during any other guilty-phase proceeding. See Fla. R.Crim. P. 3.216, committee notes (1980 amend.). In 1996, subdivisions (e) and (f) were added to Rule 3.216, at the urging of the Florida Supreme Court, to conform the rule to the Court's decision in State v. Hickson, 630 So.2d 172 (Fla.1993), in which the Court, for the first time, approved the use of evidence of the battered spouse syndrome to support a claim of self-defense at trial. See Amendments to Florida Rules of Criminal Procedure, 685 So.2d 1253, 1255, 1267-70 (Fla.1996). The two new subdivisions read as follows:
(e) Time for Filing Notice of Intent to Rely on a Mental Health Defense Other than Insanity. The defendant shall give notice of intent to rely on any mental health defense other than insanity as soon as a good faith determination has been made to utilize the defense but in no event later than 30 days prior to trial. The notice shall contain a statement of particulars showing the nature of the defense the defendant expects to prove and the names and addresses of the witnesses by whom the defendant expects to prove the defense, insofar as possible. If expert testimony will be presented, the notice shall indicate whether the expert has examined the defendant.
(f) Court-Appointed Experts for Other Mental Health Defenses. If the notice to rely on any mental health defense other than insanity indicates the defendant will rely on the testimony of an expert who has examined the defendant, the court shall upon motion of the state order the defendant be examined by one qualified expert as to the mental health defense raised by the defendant. Upon a showing of good cause, the court may order additional examinations upon motion by the state or the defendant. Attorneys for the state and defendant may be present at the examination. When the defendant relies on the testimony of an expert who has not examined the defendant, the state shall not be entitled to a compulsory examination of the defendant.
Fla. R.Crim. P. 3.216 (emphasis added).
It is clear from just a casual perusal of these two subdivisions of Rule 3.216, their genesis, the purpose and history of the rule itself, and the placement of the new subdivisions within the Florida Rules of Criminal Procedure, that neither the drafters of these revisions nor the Florida Supreme Court ever contemplated or intended this rule to be applicable in a sentencing proceeding. For these reasons, I cannot join in the majority's single-minded focus on one subdivision of Rule 3.216, subdivision (f), to reach a contrary conclusion.
This is a case of an assistant state attorney who did not think she could lose. Her lament, after the trial court advised her for the second time during the course of the proceeding that it was unsympathetic to the State's position in this case, is telling: "Judge if this is not a case of neglect of the elderly I don't know what is. . . ." The trial *684 court found, based upon all that was before it, the State was "on notice" that defense counsel intended to use Dr. Jacobson as a witness at the downward departure hearing, and the notice was sufficient. Our supreme court has said, and it oft has been repeated, that a trial court abuses its discretion "when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court." Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). The trial court did not abuse its discretion in declining to continue the downward departure hearing so the State could regroup.
The court provided two reasons to support its decision to grant a downward departure to Ms. Torres: (1) "[t]he capacity of the defendant to appreciate the criminal nature of her conduct or to conform that conduct to the requirements of the law was substantially impaired," see § 921.0026(2)(c), Fla. Stat. (2007); and (2) "[t]he defendant suffers from an adjustment disorder, dysthymic disorder, and possibly a mood disorder, not related to substance abuse or addiction, and requires and is amenable to treatment," see § 921.0026(2)(d), Fla. Stat. (2007). Aside from its conclusion in this case that the State was not afforded its right to prepare to rebut Dr. Jacobson at the downward departure hearing, the majority articulates no flaw in the decision of the trial court on the first of the two grounds. I would affirm the downward departure as to Ms. Torres on this ground.
NOTES
[1] Case No. 3D10-426.
[2] Case No. 3D10-427. Ms. Torres and Mr. Massingill are husband and wife.
[3] The record contains a conflicting reference to the victim as Ms. Torres' father, but it appears that the victim was an uncle who lived with the defendants and was "considered" by Ms. Torres to be her father.
[4] The downward departure hearing was conducted two days before the defendants accepted pleas; as to Torres, adjudication was withheld and she was placed on probation for three years with special conditions including a psychiatric evaluation, therapy and compulsory medication. As to Massingill, similar terms were imposed. The State's evidence in opposition to the downward departures was principally introduced through Ms. Torres' son.
[5] A separate expert was retained for evaluation of Mr. Massingill, but that expert's report and testimony were not presented at the downward departure hearing.
[6] These disorders are asserted to require "specialized treatment" for purposes of paragraph (2)(d).
[7] Among other reasons, mental health "defenses" and mental health mitigators under section 921.0026 may overlap and may be addressed, as here, by the same defense expert.
[8] Massingill argues a State proffer, made at the request of the court, at the close of the evidence offered on behalf of Ms. Torres sufficed because Ms. Torres' counsel did not object to or limit the purpose of the proffer. I find no merit in this argument. The record does not reflect anything resembling what could be characterized as a State proffer. Rather, the record reflects an evidentiary hearing, which, after the defense rested, devolved into a desultory discussion initiated by a trial court request of counsel for the State to provide a "bit of an opening statement in a nutshell about the case as well as . . . why you don't think these people qualify or shouldn't be given consideration under the mitigation statute."