SHEPHERD, J.,
concurring in part, and dissenting in part.
I concur in the reversal of the order granting a downward departure to Gerald Massingill. Not only was a motion never filed by Massingill asking for a departure sentence, but also Massingill provided no evidence to support the order that was entered.[8]
I would affirm the order granting a downward departure to Elizabeth Torres. The majority finds the State was sandbagged by the defense in its ability to readily oppose Ms. Torres’ Motion for Downward Departure. The majority makes light of the fact that Ms. Torres’ motion was filed nine months before the hearing on the motion. It fails to mention the motion expressly refers to Dr. Jacobson, his opinion that long-term incarceration of Ms. Torres “would cause her to further deteriorate from her current condition,” and, even then, “that she [should] be referred to outpatient treatment.” The majority states the defense’s formal motion to retain Dr. Jacobson was filed in “December, 2009” and that “[t]he case itself was scheduled for trial commencing on January 25, 2010,” but fails to state the motion was filed on December 2nd (and granted on December 4th), almost two months — a lifetime in the world of criminal trial practice — before the hearing. Furthermore, the motion to retain Dr. Jacobson stated, and the order granting the motion expressly reaffirmed, it was Ms. Torres’ intent “to retain Dr. Jacobson to testify at any hearing before the Court regarding said Downward Departure.”
The assistant state attorney first expressed her concern about being ready to confront Dr. Jacobson, or rebut his testimony, at the evidentiary hearing on Ms. Torres’ Motion for Downward Departure, held in place of Ms. Torres’ trial on Monday, January 25, after Dr. Jacobson was sworn as a witness. The assistant state attorney stated:
ASSISTANT STATE ATTORNEY: Judge, before Dr. Jacobson testifies, he was never listed as a witness for the defense. While I have never had an opportunity to depose [Dr. Jacobson], I did have an opportunity to speak to him in the hallway. I understand the court is willing to listen to Dr. Jacobson’s testimony this morning. What I am requesting Judge, is that we have our own expert [and] be allowed to evaluate Mr[s]. Torres for the same issue. I think that based upon what Dr. Jacobson did state to me in the hallway, I think the only equitable solution here is to have the State’s expert because there are issues that I can use as far as presenting evidence to the court.
THE COURT: Okay. So you think that the State is entitled to take the — to have an expert examine the defendant?
*682 ASSISTANT STATE ATTORNEY: Yes, Judge.
THE COURT: Well, interesting. We will take that up after we finish Dr. Jacobson.
DEFENSE COUNSEL: Judge, I filed this motion for downward departure in April of 2009.
(emphasis added).
The record reflects, however, that the State did not press the issue after Dr. Jacobson completed his testimony. Instead, counsel for Ms. Torres rested, and the parties and the court engaged in a lengthy colloquy, greater in length than the earlier testimony of Dr. Jacobson, during which the court on two separate occasions candidly indicated it was inclined to grant a downward departure. In the first, the court asked counsel for the State:
Why is it that — I find I think you would agree that often in cases here in this building with no priors, when it is not a willful act, it is not unusual to come off the guidelines and not go to state prison or offer some type of probation and treatment.
What do you think about the case or the circumstances that have made the State feel strongly that this is a prison case, that these people should go to prison despite their deficit that they have, I guess in their functioning, for lack of a better words?
A few minutes later, the court again addressed counsel for the State:
Tell me why you are so opposed to these — why are you so insistent these people go to prison? That is really what I want to know, okay? Obviously they could have done more, maybe could have done more. This was not a good thing what happened. These conditions are horrific, they are awful, terrible and it happened but why should these people be locked up in prison at about $35,000 a year to me and you and everybody in here as opposed to putting them on probation, make them go through some intensive, you know, treatment, therapy, whatever?
Why is it so important that prison and not therapy[.] That is what I want to hear.
It was not until thirty-three transcript pages later, with her plight showing no signs of improving, that counsel for the State finally made another request to obtain a mental health expert:
ASSISTANT STATE ATTORNEY: Judge, if the court is inclined to depart from the guidelines I would be respectfully requesting to reset to have my own psychologist evaluate Elizabeth Torres.
(emphasis added). Counsel’s request is, of course, nothing more than a common, ordinary motion for continuance. The trial court was well within its discretion to deny the request. See Bouie v. State, 559 So.2d 1113, 1114 (Fla.1990); Wade v. State, 30 So.3d 640, 642 (Fla. 4th DCA 2010); Holmes v. State, 992 So.2d 328, 328-29 (Fla. 3d DCA 2008).
However, in what surely will be a surprise to this state’s criminal defense bar (and prosecutors around the state as well for whom the court’s pronouncement likely will beget its own train of unintended consequences), the majority reverses the downward departure findings in this case on the basis that Florida Rule of Criminal Procedure 3.216 applies to downward departure hearings, obligating a defendant to disclose the name of any mental health professional he intends to call at such a hearing thirty days before the date scheduled for the hearing, see Maj. op. at p. 4, and affording the State an unconditional right, upon motion made, to obtain a rebuttal mental health expert witness to examine the defendant and testify. The ma *683 jority misunderstands the purpose of the rule and misreads it as well.
The first hint of the flaw in the court’s reasoning appears from the title of the rule itself, “Insanity at Time of Offense or Probation or Community Control Violation: Notice and Appointment of Expert.” Adopted in 1980, see In re Rules of Criminal Procedure, 389 So.2d 610, 624-626 (Fla.1980), Rule 3.216 was added to the Florida Rules of Criminal Procedure, based upon this Court’s urging in Pouncy v. State, 353 So.2d 640 (Fla. 3d DCA 1977), to regularize the procedure to be used by a defendant who intends to assert the defense of insanity or incompetency to proceed at trial, or during any other guilty-phase proceeding. See Fla. R.Crim. P. 3.216, committee notes (1980 amend.). In 1996, subdivisions (e) and (f) were added to Rule 3.216, at the urging of the Florida Supreme Court, to conform the rule to the Court’s decision in State v. Hickson, 630 So.2d 172 (Fla.1993), in which the Court, for the first time, approved the use of evidence of the battered spouse syndrome to support a claim of self-defense at trial. See Amendments to Florida Rules of Criminal Procedure, 685 So.2d 1253, 1255, 1267-70 (Fla.1996). The two new subdivisions read as follows:
(e) Time for Filing Notice of Intent to Rely on a Mental Health Defense Other than Insanity. The defendant shall give notice of intent to rely on any mental health defense other than insanity as soon as a good faith determination has been made to utilize the defense but in no event later than 30 days prior to trial. The notice shall contain a statement of particulars showing the nature of the defense the defendant expects to prove and the names and addresses of the witnesses by whom the defendant expects to prove the defense, insofar as possible. If expert testimony will be presented, the notice shall indicate whether the expert has examined the defendant.
(f) Court-Appointed Experts for Other Mental Health Defenses. If the notice to rely on any mental health defense other than insanity indicates the defendant will rely on the testimony of an expert who has examined the defendant, the court shall upon motion of the state order the defendant be examined by one qualified expert as to the mental health defense raised by the defendant. Upon a showing of good cause, the court may order additional examinations upon motion by the state or the defendant. Attorneys for the state and defendant may be present at the examination. When the defendant relies on the testimony of an expert who has not examined the defendant, the state shall not be entitled to a compulsory examination of the defendant.
Fla. R.Crim. P. 3.216 (emphasis added).
It is clear from just a casual perusal of these two subdivisions of Rule 3.216, their genesis, the purpose and history of the rule itself, and the placement of the new subdivisions within the Florida Rules of Criminal Procedure, that neither the drafters of these revisions nor the Florida Supreme Court ever contemplated or intended this rule to be applicable in a sentencing proceeding. For these reasons, I cannot join in the majority’s single-minded focus on one subdivision of Rule 3.216, subdivision (f), to reach a contrary conclusion.
This is a case of an assistant state attorney who did not think she could lose. Her lament, after the trial court advised her for the second time during the course of the proceeding that it was unsympathetic to the State’s position in this case, is telling: “Judge if this is not a ease of neglect of the elderly I don’t know what is....” The trial *684 court found, based upon all that was before it, the State was “on notice” that defense counsel intended to use Dr. Jacobson as a witness at the downward departure hearing, and the notice was sufficient. Our supreme court has said, and it oft has been repeated, that a trial court abuses its discretion “when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.” Canakaris v. Canakaris, 382 So.2d 1197, 1208 (Fla.1980). The trial court did not abuse its discretion in declining to continue the downward departure hearing so the State could regroup.
The court provided two reasons to support its decision to grant a downward departure to Ms. Torres: (1) “[t]he capacity of the defendant to appreciate the criminal nature of her conduct or to conform that conduct to the requirements of the law was substantially impaired,” see § 921.0026(2)(c), Fla. Stat. (2007); and (2) “[t]he defendant suffers from an adjustment disorder, dysthymic disorder, and possibly a mood disorder, not related to substance abuse or addiction, and requires and is amenable to treatment,” see § 921.0026(2)(d), Fla. Stat. (2007). Aside from its conclusion in this case that the State was not afforded its right to prepare to rebut Dr. Jacobson at the downward departure hearing, the majority articulates no flaw in the decision of the trial court on the first of the two grounds. I would affirm the downward departure as to Ms. Torres on this ground.

. Massingill argues a State proffer, made at the request of the court, at the close of the evidence offered on behalf of Ms. Torres sufficed because Ms. Torres' counsel did not object to or limit the purpose of the proffer. I find no merit in this argument. The record does not reflect anything resembling what could be characterized as a State proffer. Rather, the record reflects an evidentiary hearing, which, after the defense rested, devolved into a desultory discussion initiated by a trial court request of counsel for the State to provide a "bit of an opening statement in a nutshell about the case as well as ... why you don’t think these people qualify or shouldn’t be given consideration under the mitigation statute.”