83 So.3d 918 (2012)
STATE of Florida, Appellant,
v.
Harry James CHUBBUCK, Appellee.
No. 4D10-5014.
District Court of Appeal of Florida, Fourth District.
March 7, 2012.
*919 Pamela Jo Bondi, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellant.
Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, for appellee.

EN BANC
PER CURIAM.
The state appeals a final order revoking Harry Chubbuck's probation and granting a downward departure sentence. We sua sponte consider this case en banc to recede from a line of our cases that imposes a requirement on a sentencing statute that goes beyond the plain language of the statute.
Pursuant to a plea bargain involving drug related offenses, Chubbuck was adjudicated guilty and placed on five years of probation with a condition that required him to abstain from the consumption of illegal drugs.
About a year later, the probation officer filed an affidavit alleging that Chubbuck had violated his probation, in that Chubbuck's urine had tested positive for cocaine.
At the beginning of the hearing on the probation violation, the parties staked out their positions on what the trial court should do if Chubbuck admitted the violation. The state argued that the court should revoke probation and either reinstate it or sentence Chubbuck to prison; the state represented that the bottom of the sentencing guidelines was 37.65 months. Chubbuck argued that the court should revoke probation and sentence him to time served, which was 97 or 98 days at that point, because he was "a very, very ill man" who should "get treated for all of the various things that ail him."
Chubbuck testified that he was in the United States Army between 1961 and 1971, where he served in Vietnam as a surgical technician on air ambulances during the Tet Offensive. During his time in the service, he was awarded a Bronze Star and a Silver Star, as well as 22 air medals, one air medal for each half hour of combat flight time. Chubbuck said that he was shot down four times in one day trying to retrieve a radio operator. He was undergoing treatment for Post-Traumatic Stress Disorder at a Veterans Administration hospital, which was helping his condition. Chubbuck also suffered from chronic obstructive pulmonary disease, "some sort of lower left ventricle problem," and diabetes.
Chubbuck's fiancée testified that Chubbuck was a law-abiding person who was "very ill"; she took him to the "VA all the time." Chubbuck introduced a multi-page statement summarizing his military service and health conditions; under oath, Chubbuck attested to the veracity of the information in the statement.
*920 Pointing to the testimony, Chubbuck asked the court to grant a downward departure, terminate probation, and sentence him to time served. He relied on subsection 921.0026(2)(d), Florida Statutes (2009), which allows a trial court to depart from the "lowest permissible sentence" if "[t]he defendant requires specialized treatment for a mental disorder that is unrelated to substance abuse or addiction or for a physical disability, and the defendant is amenable to treatment." In response, the state argued that there was no evidence to show that the Department of Corrections could not treat Chubbuck's illnesses, so subsection (2)(d) could not be used to justify a downward departure sentence.
The trial judge made the following findings:
This defendant does not belong in prison, and it's absurd to have a 66-year-old man, who put his life on the line for our country, and has the problems he now has under the supervision of the Department of Corrections . . .
The defendant has spent 97 days in jail because he tested positive for cocaine[.] [E]ven if he used cocaine[,] I question whether anybody in this courtroom or this world, who went through in Vietnam when people like me sat home in our own living rooms and watched the war on television, would have handled this any better than the defendant.
The defendant is not accused of committing any new crimes. He is 66 years old. He has so many problems now dealing with mental health and physical problems. The common sense says enough is enough.
. . . .
And the Court respects the State's right to appeal. I just hope that there comes a time when justice is not based solely on formulas and mathematical calculations. This is an unusual case, and I believe justice is best served by treating the time spent in jail as significant punishment for the violation, and the defendant needs to move on with his life.
So, the Court accepts his admission of violating probation, revokes probation.
. . . .
And sentence[s] him to [96[1]] days in jail with credit for [96] days time served.
On appeal, the state argues that because Chubbuck did not present evidence that the Department of Corrections cannot provide the required specialized treatment, there was no competent, substantial evidence to support the trial court's decision to impose a downward departure sentence under subsection 921.0026(2)(d). Thus, the state challenges the legal ability of the sentencing judge to depart downward, step one of a two-step process identified by the Supreme Court in Banks v. State, 732 So.2d 1065, 1067-68 (Fla.1999). Under step one,
[t]he court must determine whether it can depart, whether there is a valid legal ground and adequate factual support for that ground in the case pending before it (step 1). Legal grounds are set forth in case law and statute, and facts supporting the ground must be proved at trial by "a preponderance of the evidence." This aspect of the court's decision to depart is a mixed question of law and fact and will be sustained on review if the court applied the right rule of law and if competent substantial evidence supports its ruling. Competent substantial evidence is tantamount to legally sufficient evidence, and the appellate *921 court will assess the record evidence for its sufficiency only, not its weight.
Id. at 1067.
Under Florida's sentencing statutes, "[a] downward departure from the lowest permissible sentence ... is prohibited unless there are circumstances or factors that reasonably justify the downward departure." § 921.0026(1), Fla. Stat. (2009). Subsection 921.0026(1) continues by indicating that subsection, 921.0026(2) provides a non-exclusive list of mitigating factors. Id. ("Mitigating factors to be considered include, but are not limited to, those listed in subsection (2)."). Although the trial court did not cite to a specific statutory section or use the term "mitigating factor," both the state and Chubbuck invoked subsection 921.0026(2)(d), and the court's findings on Chubbuck's health suggest that subsection as the ground for the court's departure.
Subsection 921.0026(2)(d) provides that a trial court may depart from the lowest permissible sentence if "[t]he defendant requires specialized treatment for a mental disorder that is unrelated to substance abuse or addiction or for a physical disability, and the defendant is amenable to treatment." This court and the other districts have supplemented the plain language of the statute with the further requirement that, "[i]f a departure is to be permitted on such ground, the defendant must also establish, by a preponderance of the evidence, that the Department of Corrections cannot provide the required `specialized treatment.'" State v. Gatto, 979 So.2d 1232, 1233 (Fla. 4th DCA 2008); see also, e.g., State v. Ford, 48 So.3d 948, 950 (Fla. 3d DCA 2010); State v. Scherber, 918 So.2d 423, 424-25 (Fla. 2d DCA 2006); State v. Holmes, 909 So.2d 526, 528 (Fla. 1st DCA 2005); State v. Mann, 866 So.2d 179, 182 (Fla. 5th DCA 2004).
Here, the state correctly asserts that Chubbuck offered no evidence that the Department of Corrections could not provide Chubbuck the required treatment for his mental and physical disorders.
However, the plain language of subsection 921.0026(2)(d) does not require the defendant to make such a showing. We are persuaded by the concurring opinion of Judge Warner in State v. Hunter, 65 So.3d 1123, 1125-26 (Fla. 4th DCA 2011), that we should recede from those of our cases that have added gloss to the statute. We adopt the reasoning in Judge Warner's concurring opinion as the opinion of the court:
I agree that this case should be affirmed, but I write separately to question whether the statutory factor of need of specialized treatment requires the defendant to prove that the treatment he needs is not available in the prison system. Because the statute does not make this a requirement, I would conclude that it is not part of the defendant's burden to prove this element in order for the trial court to determine that it can depart from the lowest permissible sentence under the Criminal Punishment Code.
Section 921.0026 provides mitigating circumstances "under which a departure from the lowest permissible sentence is reasonably justified...." These include: "(d) The defendant requires specialized treatment for a mental disorder that is unrelated to substance abuse or addiction or for a physical disability, and the defendant is amenable to treatment." Although not stated in the statute, there is a significant body of case law holding that to receive a sentence pursuant to section 921.0026(2)(d), there must be evidence that the Department of Corrections (DOC) cannot provide the specialized treatment required. See State v. Gatto, 979 So.2d 1232, 1233 (Fla. 4th DCA 2008); State v. Green, 971 So.2d *922 146, 148 (Fla. 4th DCA 2007); State v. Scherber, 918 So.2d 423, 424-25 (Fla. 2d DCA 2006); State v. Wheeler, 891 So.2d 614, 616 (Fla. 2d DCA 2005); State v. Green, 890 So.2d 1283, 1286 (Fla. 2d DCA 2005); State v. Mann, 866 So.2d 179, 182 (Fla. 5th DCA 2004); State v. Tyrrell, 807 So.2d 122, 128 (Fla. 5th DCA 2002); State v. Thompson, 754 So.2d 126, 127 (Fla. 5th DCA 2000); State v. Abrams, 706 So.2d 903, 904 (Fla. 2d DCA 1998).
This requirement appears to have had its origins in Abrams, the first time we find it mentioned in case law. Abrams involved a downward departure sentence from a guidelines sentence, because the crime for which he was being sentenced occurred in 1997, prior to the enactment of the Criminal Punishment Code. However, the statute at the time included the same mitigating factor but no reference to the unavailability of treatment in prison. See § 921.0026(2)(d), Fla. Stat. (1997). In Abrams, the court said, without citation to any authority: "There is no evidence in the record, however, that Mr. Abrams requires specialized treatment for HIV that cannot be provided through the Department of Corrections." 706 So.2d at 904. On the other hand, in State v. Spioch, 706 So.2d 32 (Fla. 5th DCA 1998), Judge Griffin accurately noted in discussing the same statute involved in Abrams, that
[A] lack of available treatment in prison is not required under the statute. Although illness is not a "get out of jail free card," a treatable physical disability is one of the circumstances where the legislature has chosen to re-invest trial judges with discretion to vary from sentencing guidelines.
Id. at 36. Despite this conflict of opinion between the districts, the courts appear to have turned the one sentence in Abrams into an additional element for the defendant to prove in order to obtain a downward departure sentence under section 921.0026(2)(d), Florida Statutes.1 Our court likewise adopted this element as part of the defendant's burden of proof, without any authority other than the citation of cases, which lead back to Abrams. See, e.g., Gatto, 979 So.2d at 1233; Green, 971 So.2d at 148.
1 Furthermore, the Fifth District's own case law is internally inconsistent. The Fifth District never receded from Spioch, but subsequent Fifth District opinions have required the defendant to prove that the Department cannot provide the specialized treatment required. See Mann, 866 So.2d at 182; Tyrrell, 807 So.2d at 128; Thompson, 754 So.2d at 127.
Sentencing statutes must be strictly construed according to their letter. See Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991); Atterbury v. State, 991 So.2d 980, 981 (Fla. 4th DCA 2008). In sentencing, the trial judge should strictly follow the dictates of statutes. See Troutman v. State, 630 So.2d 528, 533 n. 6 (Fla.1993), superseded by statute on other grounds as stated in Ritchie v. State, 670 So.2d 924 (Fla.1996). In addition, the rule of lenity requires that when language of a statute is susceptible of differing constructions, it must be construed most favorably to the accused. See § 775.021(1), Fla. Stat. (2008).
By requiring the defendant seeking downward departure from a criminal punishment code sentence to prove that services to treat his or her medical condition are unavailable in prison, the courts have placed an additional burden on the defendant which is not required by the Legislature. In fact, nothing in the legislative history even hints that in order to justify a downward departure on this ground, services must be unavailable in prison to treat the condition. While that might be what the Legislature intended, I think it should state its intentions clearly so that no one has to *923 guess as to the requirements in punishment statutes.
The burden of proving a negative, i.e. that no treatment options exist in the prison system, is problematic for the defendant and defense attorneys. For instance, in this case the expert testified that she had been unable to reach Department of Corrections officials to have them explain their treatment procedures in the prison system. Instead she relied on other information, including her work with former inmates and the general protocols for treating mental illness, as well as other information which might be considered hearsay.
The prison system is a very large institution with very large medical facilities. To track down all of the available treatment in the system may be a daunting and very expensive task, adding to an already overburdened public defender system. On the other hand, the information on availability of treatment is readily available to the state. I think the state is in the better position to offer such proof in opposition to a downward departure.
Hunter, 65 So.3d at 1125-26 (Warner, J., specially concurring) (emphasis in original).
Here, the trial judge believed the testimony that Chubbuck had mental and physical problems for which he was receiving treatment at the Veterans' Administration Hospital. Neither the state nor Chubbuck offered any evidence as to the treatment options available to him at the Department of Corrections. The trial judge properly considered Chubbuck's age and medical conditions as "mitigating factors" that justified a downward departure. This finding was consistent with subsection 921.0026(2)(d).
We recede from Hunter, Belluscio, Gatto, and Green and certify direct conflict[2] with State v. Scherber, 918 So.2d 423, 424-25 (Fla. 2d DCA 2006); State v. Wheeler, 891 So.2d 614, 616 (Fla. 2d DCA 2005); State v. Green, 890 So.2d 1283, 1286 (Fla. 2d DCA 2005); State v. Mann, 866 So.2d 179, 182 (Fla. 5th DCA 2004); State v. Tyrrell, 807 So.2d 122, 128 (Fla. 5th DCA 2002); State v. Thompson, 754 So.2d 126, 127 (Fla. 5th DCA 2000); State v. Abrams, 706 So.2d 903, 904 (Fla. 2d DCA 1998); State v. Ford, 48 So.3d 948, 950 (Fla. 3d DCA 2010); and State v. Holmes, 909 So.2d 526, 528 (Fla. 1st DCA 2005).
Because the state was not on notice of this court's present view of subsection 921.0026(2)(b) at the time of the sentencing hearing, we reverse the sentence to provide the state another opportunity to present evidence as to whether the Department of Corrections can provide the required "specialized treatment." Although the state had the opportunity to present such evidence at the sentencing hearing, we recognize the possibility that the state did not present such evidence given this court's view of the law at that time. We emphasize, however, that if the state presents such evidence at the new sentencing hearing, the trial court is not precluded from granting the defendant's request for a downward departure for the same reasons. Rather, the state's evidence is merely an additional factor which the trial court may consider in exercising its discretion as to whether to grant the defendant's request for a downward departure.
Reversed and remanded for a new sentencing hearing.
MAY, C.J., WARNER, POLEN, STEVENSON, GROSS, TAYLOR, DAMOORGIAN, CIKLIN, GERBER, LEVINE, and CONNER, JJ., concur.
*924 HAZOURI, J., recused.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
I write to emphasize that the record presents reasons for a downward departure that support the circuit court's sentencing decision, in addition to the ground contained in subsection 921.0026(2)(d).
For the purpose of deciding whether to downwardly depart from the lowest permissible guidelines sentence, section 921.0026, Florida Statutes (2009) does not limit a sentencing judge to those "mitigating factors" specified in subsection 921.0026(2). Rather, subsection 921.0026(1) states that a judge is "prohibited" from downwardly departing
unless there are circumstances or factors that reasonably justify the downward departure. Mitigating factors to be considered include, but are not limited to, those listed in subsection (2).
(emphasis added). The statute thus allows the sentencing judge some discretion in identifying those mitigating factors and circumstances that justify a downward departure.
Here, in addition to Chubbuck's mental health and physical problems under subsection 921.0026(2)(d), the trial court also considered his age and the fact that he was not a danger to the general public. The court's sentence was consistent with research by criminologists and the sound utilization of the resources of the Department of Corrections. In 1995, in discussing the imposition of long, mandatory sentences for "three strikes" offenders,[3] the Florida Task Force for the Review of the Criminal Justice and Corrections Systems, a commission created by the legislature at Chapter 93-404, Laws of Florida, observed:
Most criminologists believe that the years between ages eighteen and thirty-four are the high crime years. As offenders age, they tend to commit fewer offenses. Many criminologists believe that incarcerating offenders well past their high crime years may be a poor use of expensive resources, especially if younger, more violent, and crime-prone offenders are released early after their first or second conviction because of limited space. In addition, older prison populations tend to have more frequent and expensive medical problems adding to the drain on resources.
Final Report, Florida Task Force for the Review of the Criminal Justice and Corrections Systems (January, 1995), p. 59.
NOTES
[1] The court originally announced a different number of days, but later corrected that number.
[2] See Fla. R.App. P. 9.030(a)(2)(A)(vi).
[3] "Basically, three strikes legislation imposes life (or extremely long) sentences on offenders who are convicted of a third felony. The legislation varies in the number of offenses (two in some states, including Georgia) needed to trigger the sanction, the type of offenses (in some states, the offenses must be violent felonies), and the method by which they were enacted...." Final Report, Florida Task Force for the Review of the Criminal Justice and Corrections Systems (January, 1995), p. 59.