# Supreme Court of Florida

_____

No. SC12-657
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**HARRY JAMES CHUBBUCK,**
Respondent.

[June 19, 2014]

PER CURIAM.

This case is before the Court for review of the decision of the Fourth District Court of Appeal in State v. Chubbuck, 83 So. 3d 918 (Fla. 4th DCA 2012) (en banc). The district court certified that its decision is in direct conflict with the following decisions of the district courts of appeal: State v. Ford, 48 So. 3d 948 (Fla. 3d DCA 2010), State v. Scherber, 918 So. 2d 423 (Fla. 2d DCA 2006), State v. Holmes, 909 So. 2d 526 (Fla. 1st DCA 2005), State v. Wheeler, 891 So. 2d 614 (Fla. 2d DCA 2005), State v. Green (Green I), 890 So. 2d 1283 (Fla. 2d DCA 2005), State v. Mann, 866 So. 2d 179 (Fla. 5th DCA 2004), State v. Tyrrell, 807 So. 2d 122 (Fla. 5th DCA 2002), State v. Thompson, 754 So. 2d 126 (Fla. 5th

DCA 2000), and State v. Abrams, 706 So. 2d 903 (Fla. 2d DCA 1998).  We have

jurisdiction.  See art. V, § 3(b)(4), Fla. Const.

This case pertains to subsection 921.0026(2)(d), Florida Statutes (2009),

which authorizes a trial court to give a downward departure sentence if it finds that

"[t]he defendant requires specialized treatment for a mental disorder that is

unrelated to substance abuse or addiction or for a physical disability, and the

defendant is amenable to treatment."  § 921.0026(2)(d), Fla. Stat. (2009).  The

question presented is whether this departure ground requires the defendant to prove

that the required specialized treatment is unavailable in the Florida Department of

Corrections (DOC).  We hold that the plain language of the statute does not include

a requirement that the defendant prove unavailability of specialized treatment in

the DOC as part of the definition.  We therefore approve the Fourth District's

decision in Chubbuck.

**FACTS**

In January 2008, Harry Chubbuck was charged with one count of trafficking

in cocaine (28-200 grams) (§ 893.135(1)(b)1.a., Fla. Stat. (2007)), one count of

possession of cocaine with intent to sell (§ 893.13(1)(a), Fla. Stat. (2007)), one

count of possession of paraphernalia (production) (§ 893.147(1)(a), Fla. Stat.

(2007)), and one count of felon in possession of firearm or ammunition

(constructive possession) (§ 790.23(1)(a), (c)-(e), Fla. Stat. (2007)).  Pursuant to a

- 2 -

subsequent plea agreement entered into by Chubbuck and the State, Chubbuck agreed to plead guilty to the charges in exchange for five years' probation and no incarceration.[1] In April 2009, the trial court adjudicated Chubbuck guilty and placed him on probation in accordance with the plea agreement.[2] The trial court further ordered Chubbuck to abstain from the use of alcohol and illegal drugs and submit to random urinalysis testing during probation.

On July 21, 2010, a violation of probation affidavit was filed against Chubbuck, which alleged that Chubbuck "fail[ed] to live and remain at liberty without violating any law" by possessing cocaine as revealed from his urine sample. Chubbuck then filed with the trial court an "Information for Court," which outlined his prior military service and his extensive health issues.[3] On November 12, 2010, the trial court held Chubbuck's violation of probation hearing. The State informed the trial court that it could either reinstate Chubbuck's probation or

---

1. The scoresheet indicated that the lowest permissible prison sentence was 33.3 months and the maximum prison sentence was sixty-one years.

2. The probation order omits the possession of paraphernalia count.

3. It was represented through this filing that Chubbuck suffers from post-traumatic stress disorder (PTSD), chronic obtrusive pulmonary disease, diabetes, hepatitis C, severe arthritis, and melanoma, among other health issues. The filing also stated that once some of his conditions are under control, interferon treatment is required for his hepatitis C, which requires strict monitoring. Without proper medications, according to the filing, Chubbuck's conditions could potentially become exacerbated, thereby causing depression, suicide, increased intrusive thoughts, hallucinatory flashbacks, nightmares, increased irritability, social isolation, "bad" insomnia, weight loss, and low energy.

sentence him in accordance with the sentencing guidelines, where the bottom of the guidelines totaled 37.65 months. Chubbuck testified at the hearing that the "Information for Court" is true and correct about himself and his conditions. The document was admitted into evidence. Chubbuck acknowledged his prior military service and that he was undergoing treatment for PTSD at the Veterans Affairs (VA) Hospital. Additionally, Chubbuck's fiancée testified that Chubbuck is "very ill" and that she takes him to the VA Hospital "all the time."

Counsel for Chubbuck told the trial court that Chubbuck is a "very, very ill man," and asked the court to terminate his probation and sentence him to time served to allow for treatment of his various ailments at the VA Hospital. Chubbuck's counsel explained that Chubbuck "needs [i]nterferon treatment, which works." Relying on the downward departure ground set forth in subsection 921.0026(2)(d), Chubbuck's counsel requested that the court find that a downward departure is appropriate based on Chubbuck's mental condition and physical disabilities. The State, relying on State v. Betancourt, 40 So. 3d 53 (Fla. 5th DCA 2010),[4] argued that there was no evidence presented that DOC would be ill-equipped to treat Chubbuck.

---

4. In Betancourt, the Fifth District Court of Appeal stated:
Notably, in order to demonstrate the need for specialized treatment, it must be established that the mental disorder or physical disability requires treatment that is not available in the [DOC]. Moreover, it is well-established in the case law that a downward departure is

The trial judge found as follows:

> [T]he bottom line here is before the Court stands a man who has served his country and put himself at risk. The documentation is clear that as a result of serving this country, he has significant problems that he's trying to deal with.
>
> The only violation before the Court is that the defendant, in the light most favorable to the State, may have used a controlled substance while on probation. Under no set of circumstances would I send the defendant to prison in this scenario.
>
> . . .
>
> [T]he defendant is 66 years old. The nature of his problems [is] far beyond the expertise of the [DOC]. . . . There is nothing that the [DOC] will do that in anyway [sic] will address any significant issues the defendant has.
>
> The defendant is a former member of the Sheriff's Office. He has honorably served our country. He clearly has suffered for the rest of his life for that. The question then becomes: given the . . . millions of Americans who are actually either in prison or under some type of supervised release, is there anything to be gained by the defendant being placed back on probation other than to say, we put him back on probation, and [have] it sound politically better? In other words, is society better off because a 66-year-old hero, a veteran with significant problems, is now being supervised by the [DOC]?
>
> . . .
>
> The Court recognizes that it must abide by the law . . . .
>
> I'm going to make this very simple for the [a]ppellate [c]ourt and for the State Attorney's Office. . . . This defendant does not belong in prison, and it's absurd to have a 66-year-old man, who put his life on the line for our country, and has the problems he now has under the supervision of the [DOC]. It's just called ludicrous.
>
> The defendant has spent 97 days in jail because he tested positive for cocaine, even if he used cocaine. I question whether anybody in this courtroom or this world, who went what this defendant went through in Vietnam when people like me sat home in

---

improper in the absence of evidence . . . that any such treatment could not be provided by the [DOC].

Id. at 57.

- 5 -

our living rooms and watched the war on television, would have handled this any better than the defendant.

The defendant is not accused of committing any new crimes. He is 66 years old. He has so many problems now dealing with mental health and physical problems. The common sense says enough is enough.

. . .

And the Court respects the State's right to appeal. I just hope that there comes a time when justice is not based solely on formulas and mathematical calculations. This is an unusual case, and I believe justice is best served by treating the time spent in jail as significant punishment for the violation, and the defendant needs to move on with his life.

The trial court revoked Chubbuck's probation as unsuccessful, and sentenced him to ninety-six days in jail with ninety-six days' credit for time served.

On appeal, the State claimed that "because Chubbuck did not present evidence that the [DOC] cannot provide the required specialized treatment, there was no competent, substantial evidence to support the trial court's decision to impose a downward departure sentence under subsection 921.0026(2)(d)." Chubbuck, 83 So. 3d at 920. The Fourth District, sitting en banc, held that the plain language of subsection 921.0026(2)(d) does not require the defendant to prove that the required specialized treatment is unavailable in the DOC. Id. at 921. Consequently, the Fourth District "recede[d] from a line of [its] cases that imposes a requirement on a sentencing statute that goes beyond the plain language of the

statute": <u>State v. Hunter</u>, 65 So. 3d 1123 (Fla. 4th DCA 2011),[5] <u>State v. Belluscio</u>,

82 So. 3d 910 (Fla. 4th DCA 2011),[6] <u>State v. Gatto</u>, 979 So. 2d 1232 (Fla. 4th

DCA 2008),[7] and <u>State v. Green</u> (<u>Green II</u>), 971 So. 2d 146 (Fla. 4th DCA 2007),[8]

and certified direct conflict with <u>Scherber</u>,[9] <u>Wheeler</u>,[10] <u>Green I</u>,[11] <u>Mann</u>,[12]

---

5. In <u>Hunter</u>, the Fourth District upheld a departure sentence based on subsection 921.0026(2)(d), finding that "the expert testified that the specialized treatment the defendant needed was not available in the prison system, a requirement for downward departure under section 921.0026(2)(d)." 65 So. 3d at 1125.

6. The Fourth District in <u>Belluscio</u> held as follows:

We find no error in the trial court's imposition of a downward departure sentence, because the defendant met his burden of proving the requirements for a downward departure sentence, pursuant to section 921.0026(2)(d), Florida Statutes (2009), and presented unrebutted testimony that the defendant required specialized treatment for mental health disorders unrelated to substance abuse, which was not available at the [DOC].

82 So. 3d at 911.

7. "If a departure is to be permitted [under subsection 921.0026(2)(d)], the defendant must also establish, by a preponderance of the evidence, that the [DOC] cannot provide the required 'specialized treatment.'" <u>Gatto</u>, 979 So. 2d at 1233.

8. In <u>Green II</u>, the Fourth District concluded as follows: "Green has the burden of proving that the DOC could not provide the specialized treatment he requires and such proof was not presented to the trial court. We reverse the downward departure sentence and remand for resentencing." 971 So. 2d at 148-49.

9. "To receive a sentence pursuant to . . . section [921.0026(2)(d)], a defendant must prove that the [DOC] cannot provide the specialized treatment required. . . ." <u>Scherber</u>, 918 So. 2d at 424-25.

Tyrrell,[13] Thompson,[14] Abrams, Ford,[15] and Holmes.[16] Chubbuck, 83 So. 3d at

919, 923. The district court adopted Judge Warner's reasoning provided in her

10. "To show that a defendant requires specialized treatment for a mental disorder, 'it must be established that the mental disorder requires treatment that is not available in the [DOC].' " Wheeler, 891 So. 2d at 616 (quoting State v. Mann, 866 So. 2d 179, 182 (Fla. 5th DCA 2004)).

11. "Ms. Green did not meet her burden of establishing that the DOC could not provide the specialized treatment required." Green I, 890 So. 2d at 1286.

12. "This court and others have held that in order to establish the need for specialized treatment, it must be established that the mental disorder requires treatment that is not available in the [DOC]." Mann, 866 So. 2d at 182.

13. "[T]here was no evidence presented showing that Jones required specialized treatment for his condition, or that any treatment he required could not be adequately provided by the [DOC]. . . . Accordingly, no competent substantial evidence supports Jones's medical condition as a basis for a downward departure." Tyrrell, 807 So. 2d at 127-28.

14. "No evidence was presented to the trial court that specialized treatment was required, or that any required treatment could not be provided by the [DOC]." Thompson, 754 So. 2d at 127.

15. "Florida law . . . requires that, if a departure is to be permitted under subsection [921.0026](2)(d), 'the defendant must also establish, by a preponderance of the evidence, that the [DOC] cannot provide the required "specialized treatment." ' " Ford, 48 So. 3d at 950 (quoting Gatto, 979 So. 2d at 1233).

16. The First District in Holmes concluded that the downward departure sentence was not supported by competent substantial evidence, finding that "[t]here is no evidence in the record that DOC could not or would not accommodate any treatment needed." 909 So. 2d at 528.

- 8 -

special concurrence in <u>Hunter</u>.[17]  <u>Chubbuck</u>, 83 So. 3d at 921.  The Fourth District concluded by reversing Chubbuck's sentence and remanding for a new sentencing hearing:

> Because the state was not on notice of this court's present view of subsection 921.0026(2)(b) at the time of the sentencing hearing, we reverse the sentence to provide the state another opportunity to present evidence as to whether the [DOC] can provide the required "specialized treatment."  Although the state had the opportunity to present such evidence at the sentencing hearing, we recognize the possibility that the state did not present such evidence given this court's view of the law at that time.  We emphasize, however, that if the state presents such evidence at the new sentencing hearing, the trial court is not precluded from granting the defendant's request for a downward departure for the same reasons.  Rather, the state's evidence is merely an additional factor which the trial court may consider in exercising its discretion as to whether to grant the defendant's request for a downward departure.

<u>Id.</u> at 923.[18]  Thereafter, the State sought to invoke this Court's discretionary jurisdiction and moved to recall and stay the issuance of the district court's mandate, which we granted.

---

17.  In <u>Hunter</u>, Judge Warner concluded that subsection 921.0026(2)(d) "does not require the defendant to offer proof that the prison system does not provide the specialized treatment that the defendant requires."  65 So. 3d at 1126-27 (Warner, J., concurring specially).  Judge Warner argued that courts have placed an additional burden on the defendant, not required by the Legislature, and found that "nothing in the legislative history even hints" that services must be unavailable in prison to treat the condition.  <u>Id.</u> at 1126 (Warner, J., concurring specially).  Judge Warner also maintained that the burden of proving a negative is problematic for the defense, as tracking down all of the DOC's available treatment may be a "daunting and very expensive task."  <u>Id.</u> (Warner, J., concurring specially).

**ANALYSIS**

The question before us is whether subsection 921.0026(2)(d) requires the defendant to prove that the required specialized treatment he needs is unavailable in the DOC. As the issue presented is one of statutory interpretation, the standard of review is de novo. Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 194 (Fla. 2007).

A trial court may impose a downward departure below the lowest permissible sentence if it finds, by a preponderance of the evidence, circumstances or factors that reasonably justify the downward departure. §§ 921.0026(1), 921.002(1)(f), Fla. Stat. (2009).[19] A downward departure sentence is subject to appellate review, but the extent of the departure is not. § 921.0026(1), Fla. Stat. In

---

18. In his special concurrence in Chubbuck, Judge Gross found that the record contains reasons which supported Chubbuck's downward departure sentence other than subsection 921.0026(2)(d). Id. at 924 (Gross, J., concurring specially). Judge Gross noted that the trial judge also considered Chubbuck's age and that he was not a danger to the general public. Id. (Gross, J., concurring specially).

19. A departure sentence:

must be accompanied by a written statement by the sentencing court delineating the reasons for the departure, filed within 7 days after the date of sentencing. A written transcription of reasons stated orally at sentencing for departure from the lowest permissible sentence is permissible if it is filed by the court within 7 days after the date of sentencing.

§ 921.00265(2), Fla. Stat. (2009).

Banks v. State, 732 So. 2d 1065 (Fla. 1999), this Court set out the process for

departing from the guidelines:

> A trial court's decision whether to depart from the guidelines is
> a two-part process. First, the court must determine whether it <u>can</u>
> depart, i.e., whether there is a valid legal ground and adequate factual
> support for that ground in the case pending before it (step 1). Legal
> grounds are set forth in case law and statute, and facts supporting the
> ground must be proved at trial by "a preponderance of the evidence."
> This aspect of the court's decision to depart is a mixed question of law
> and fact and will be sustained on review if the court applied the right
> rule of law and if competent, substantial evidence supports its ruling.
> Competent, substantial evidence is tantamount to legally sufficient
> evidence, and the appellate court will assess the record evidence for
> its sufficiency only, not its weight.
>
> Second, where the step one requirements are met, the trial court
> further must determine whether it <u>should</u> depart, i.e., whether
> departure is indeed the best sentencing option for the defendant in the
> pending case. In making this determination (step 2), the court must
> weigh the totality of the circumstances in the case, including
> aggravating and mitigating factors. This second aspect of the decision
> to depart is a judgment call within the sound discretion of the court
> and will be sustained on review absent an abuse of discretion.
> Discretion is abused only where no reasonable person would agree
> with the trial court's decision.

<u>Id.</u> at 1067-68 (footnotes omitted).

Section 921.0026(2) sets out a non-exclusive list of mitigating circumstances

under which a downward departure sentence is reasonably justified for non-capital

felonies committed on or after October 1, 1998. <u>See</u> § 921.0026(2)(a)-(m), Fla.

Stat. Under paragraph (2)(d), the mitigating circumstance at issue, a trial court

may depart from the lowest permissible sentence if the defendant requires

"specialized treatment" for a mental disorder (unrelated to substance abuse or addiction) or for a physical disability, and the defendant is amenable to treatment. § 921.0026(2)(d), Fla. Stat.; Ch. 97-194, § 8, Laws of Fla.[20]

Chapter 921 does not define "specialized treatment." As observed by Judge Warner, the requirement that the defendant must prove that the specialized treatment is unavailable in the DOC "appears to have had its origins in Abrams." Hunter, 65 So. 3d at 1125 (Warner, J., concurring specially). In Abrams, the Second District noted that "[a] defendant's need for specialized treatment for physical disability and amenability to treatment is a valid reason for departure." 706 So. 2d at 904. The district court in Abrams reversed the defendant's downward departure sentence because "[t]here is no evidence in the record . . . that Mr. Abrams requires specialized treatment for HIV that cannot be provided through the [DOC]." Id. (emphasis added).

---

20. Pursuant to section 945.12, Florida Statutes (2013), prisoners who require "specialized" treatment may be transferred from the DOC to another facility to receive treatment:

> The [DOC] is authorized to transfer substance abuse impaired persons . . . and tuberculous or other prisoners requiring specialized services to appropriate public or private facilities or programs for the purpose of providing specialized services or treatment for as long as the services or treatment is needed, but for no longer than the remainder of the prisoner's sentence.

§ 945.12(1), Fla. Stat. (2013) (emphasis added).

The Second District in Abrams did not cite to any authority which stood for the proposition that there must be record evidence establishing that specialized treatment could not be provided by the DOC. There was no reference to any statutory provision in the opinion; the district court simply cited to the Sentencing Guidelines Scoresheet in Florida Rule of Criminal Procedure 3.990. Id. Abrams was decided in February 1998, which was prior to the effective date of subsection 921.0026(2)(d). Presumably, the downward departure ground in Abrams involved subsection 921.0016(4)(d), Florida Statutes (1994), which became effective in January 1994 and provided for a downward departure if the defendant required treatment of a specialized nature for addiction, a mental disorder, or a physical disability and the defendant was amenable to treatment. § 921.0016(4)(d), Fla. Stat.; Ch. 93-406, § 13. Subsection 921.0016(4)(d) was amended to include the exact same language now found in subsection 921.0026(2)(d), and was repealed effective October 1, 1998, but applies to any offenses committed before that date. Ch. 97-194, § 1, at 41, Laws of Fla. In sum, none of the versions of subsection 921.0016(4)(d) requires that the specialized treatment be unavailable in the DOC.

Since the Abrams decision, each of our district courts of appeal have concluded that the defendant's required specialized treatment must be unavailable in the DOC in order for subsection 921.0026(2)(d) to apply. See, e.g., Holmes, 909 So. 2d at 528; State v. Hall, 981 So. 2d 511, 514 (Fla. 2d DCA 2008); State v.

Massingill, 77 So. 3d 677, 680 (Fla. 3d DCA 2011); Gatto, 979 So. 2d at 1233; State v. Knox, 990 So. 2d 665, 668 (Fla. 5th DCA 2008), rev. denied, 68 So. 3d 234 (Fla. 2011). However, like the Fourth District's decision in Chubbuck, the Fifth District, sitting en banc, recently held that there is no such requirement. State v. Owens, 95 So. 3d 1018, 1019 (Fla. 5th DCA 2012) (en banc). In Owens, the Fifth District determined that its previous view was erroneous because it added an extra requirement that went beyond the plain language of subsection 921.0026(2)(d). Id. The Owens court also adopted the reasoning of Judge Warner's special concurrence in Hunter. Id. The Fifth District accordingly affirmed the defendant's downward departure sentence even though there was no "evidence as to the treatment options available to [the defendant] in the DOC" related to his mental disorder. Id. at 1019, 1021.[21]

It is a fundamental principle of Florida jurisprudence that penal statutes must be strictly construed. See Perkins v. State, 576 So. 2d 1310, 1312 (Fla. 1991); see also § 775.021(1), Fla. Stat. (2009) ("The provisions of th[e] [Florida Criminal] [C]ode and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused."); § 775.012(2), Fla. Stat. (2009) (stating that one general

---

21. As a result of its holding, the Fifth District "recede[d] from [its] cases [which] add[ed] the additional requirement to the statute," and certified direct and express conflict with the decisions of the district courts in Ford, Scherber, Holmes, Wheeler, Green I, and Abrams. Owens, 95 So. 3d at 1019, 1021.

purpose of the criminal code is to give an understandably fair warning of authorized sentences).

In construing subsection 921.0026(2)(d), our analysis begins with the actual language of the statute. See Heart of Adoptions, Inc., 963 So. 2d at 198. In Koile v. State, 934 So. 2d 1226 (Fla. 2006), this Court explained:

> When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent. In such instance, the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent.

Id. at 1230-31 (quoting Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64-65 (Fla. 2005) (internal citation omitted)). Courts should not construe unambiguous statutes in a manner that would extend, modify, or limit their terms or the obvious implications as provided by the Legislature. See Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984); see also Curry v. Lehman, 47 So. 18, 20 (Fla. 1908) ("[I]t is the duty of the court to interpret laws and not to make them, and we are to make no subtraction or addition to the meaning of a statute.").

We find subsection 921.0026(2)(d) to be clear and unambiguous, and therefore, the plain and ordinary meaning must control. We conclude that the plain language of subsection 921.0026(2)(d) does not require the defendant to prove that the required specialized treatment is unavailable in the DOC. We further find that this interpretation does not lead to an unreasonable result or a result clearly

- 15 -

contrary to legislative intent. Accordingly, a defendant who is requesting a downward departure sentence pursuant to subsection 921.0026(2)(d) must prove the following three elements by a preponderance of the evidence: (1) the defendant has a mental disorder (unrelated to substance abuse or addiction) or a physical disability; (2) which requires specialized treatment; and (3) the defendant is amenable[22] to such treatment.

We additionally note that our Legislature has included "specialized treatment otherwise not available" language in a separate statute, section 958.11(3)(c), Florida Statutes (2013). Section 958.11(3)(c) authorizes the DOC to assign a youthful offender to a facility not designed for the care, custody, control, and supervision of youthful offenders if the offender needs "specialized treatment otherwise not available at the youthful offender facility." § 958.11(3)(c), Fla. Stat. Had the Legislature intended to require unavailability of specialized treatment in the DOC as an element of subsection 921.0026(2)(d), it could have said so. See Hopkins v. State, 105 So. 3d 470, 474 (Fla. 2012) ("Had the Legislature intended to exclude juvenile detention centers from the scope of section 784.082, it would have said so."); Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So. 2d 777, 778 (Fla. 1st DCA 1968) ("Had the legislature intended the statute to import a

_____

22. We have previously defined "amenability" as "a reasonable possibility that . . . treatment will be successful." Herrin v. State, 568 So. 2d 920, 922 (Fla. 1990).

- 16 -

more specific and definite meaning, it could easily have chosen words to express any limitation it wished to impose.").

## This Case

In light of our holding, we agree with the Fourth District's decision to reverse Chubbuck's downward departure sentence and remand for a new sentencing hearing in order to afford the State an opportunity to present evidence, if any, as to whether the DOC can provide the required specialized treatment. Evidence which demonstrates that the DOC can so provide is one factor for the trial court's consideration in deciding whether to give a downward departure sentence.

## CONCLUSION

Based on the foregoing, we hold that the defendant is not required to prove that the DOC cannot provide the required specialized treatment in seeking a downward departure sentence under subsection 921.0026(2)(d). In light of the above, we approve the Fourth District's decision in Chubbuck and we disapprove the decisions of the district courts in Ford, Scherber, Holmes, Wheeler, Green I, Mann, Tyrrell, Thompson, and Abrams, which hold to the contrary.

It is so ordered.

POLSTON, C.J., and LEWIS, CANADY, LABARGA, and PERRY, JJ., concur.
QUINCE, J., concurs in part and dissents in part with an opinion, in which
PARIENTE, J., concurs.

- 17 -

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.


QUINCE, J., concurring in part and dissenting in part.

I concur in the majority's conclusion that the plain language of subsection 921.0026(2)(d), does not require a defendant to prove that the required specialized treatment is unavailable in the Department of Corrections. I respectfully dissent, however, from the majority's decision to remand the case back to the trial court for a new sentencing hearing because there is competent, substantial evidence that the defendant has satisfied all that is necessary under subsection 921.0026(2)(d).

PARIENTE, J., concurs.


Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

      Fourth District – Case No. 4D10-5014

      (Palm Beach County)

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Celia Terenzio, Bureu Chief, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, Florida,

      for Petitioner

Carey Haughwout, Public Defender, and Paul Edward Petillo, Assistant Public Defender, West Palm Beach, Florida,

      for Respondent