IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

LAURA RIVERO LEVEY,

      Appellant,

v.

KEN DETZNER, Secretary of State, State of Florida; PENELOPE TOWNSLEY, Supervisor of Elections, Miami-Dade County, Florida; and DAVID RICHARDSON,

      Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED.

CASE NO. 1D14-3854

Opinion filed September 3, 2014.

An appeal from the Circuit Court for Leon County.
Charles A. Francis, Judge.

John R. Kelso of Levey Lieberman LLP, Miami Beach, for Appellant.

J. Andrew Atkinson, General Counsel, and Ashley E. Davis, Assistant General Counsel, Florida Department of State, for Appellee Florida Secretary of State Kenneth W. Detzner.

R.A. Cuevas, Jr., Miami-Dade County Attorney; Oren Rosenthal and Michael B. Valdes, Assistant County Attorneys, Miami, for Appellee Penelope Townsley.

Mark Herron, Robert J. Telfer, III, and J. Brennan Donnelly of Messer Caparello, P.A., Tallahassee, for Appellee David Richardson.

LEWIS, C.J.

      Laura Rivero Levey is an intended candidate for the District 113 seat in the

Florida House of Representatives. She appeals an adverse final judgment rejecting

her claim for declaratory and injunctive relief in the form of an order directing that her name be placed on the ballot for the November 2014 general election. We affirm.

Addressing the process of qualifying for election to federal, state, county, or district office, section 99.061(7), Florida Statutes (2014), sets forth the items that must be received by the appropriate filing officer by the end of the qualifying period in order for a candidate to be qualified. Relevant to this matter, subparagraph (7)(a)1. provides as follows:

> (7)(a)   In order for a candidate to be qualified, the following items must be received by the filing officer by the end of the qualifying period:
>
> 1.   A properly executed check drawn upon the candidate's campaign account payable to the person or entity as prescribed by the filing officer in an amount not less than the fee required by s. 99.092, unless the candidate obtained the required number of signatures on petitions pursuant to s. 99.095. The filing fee for a special district candidate is not required to be drawn upon the candidate's campaign account. **If a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate and the candidate shall have until the end of qualifying to pay the fee with a cashier's check purchased from funds of the campaign account.** Failure to pay the fee as provided in this subparagraph shall disqualify the candidate.

(Emphasis added).

The qualifying period for the 2014 election cycle commenced at 12:00 p.m. on Monday, June 16, 2014, and ended at 12:00 p.m. on Friday, June 20, 2014. On

June 17, 2014, Levey completed the filing of her qualifying papers with the Secretary of State and tendered a check for the qualifying fee drawn on her campaign account. However, the check was not honored by Levey's bank, and state officials were not notified of that fact until after the qualifying period had closed. Upon learning that the check had been returned, Levey attempted to tender a cashier's check for the filing fee accompanied by a letter from her bank explaining that the return of the qualifying check was due to bank error and through no fault of hers, but that tender was refused because the qualifying period had expired.[1]

Levey's complaint for declaratory and injunctive relief sought a declaration that she was a qualified candidate and injunctive relief ordering the Secretary of State to add her to the list of qualified candidates and directing the Supervisor of Elections to add her name to the ballot for the November 2014 general election. Cross-motions for summary judgment were filed, and following a hearing on the matter, the trial court rendered its final judgment concluding that despite the

---

[1] Whether Levey was completely without fault in failing to pay the qualifying fee in the manner required by the statute is disputed by the parties. The existence of such a factual dispute would preclude summary judgment, but because the statute applies if a candidate's qualifying check is "returned by the bank for any reason," who was at fault is of no consequence to our disposition.

harshness of the result, section 99.061(7)(a)1. precluded the granting of relief. We agree.

Legislative intent is the polestar that guides a court's interpretation of a statute. Greene v. Clemens, 98 So. 3d 791, 793 (Fla. 1st DCA 2012). A court must endeavor to construe a statute to effectuate the Legislature's intent. Id. In discerning legislative intent, a court must look to the actual language used in the statute. Id. When a statute is clear and unambiguous, a court will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent. Id. It is not the prerogative of a court to construe an unambiguous statute differently from the plain language of the words employed, nor is the wisdom of the statute within the ambit of the court's authority. See Bingham v. Manson, 363 So. 2d 370, 371 (Fla. 1st DCA 1978).

The statute at issue is clear and unambiguous. Although we agree with the trial court that this result is harsh, it is mandated by the clear language of the statute. If a candidate's qualifying check is returned *for any reason*, the candidate must pay the qualifying fee by cashier's check before the end of the qualifying period. Levey's check was returned, the reason for that occurring is immaterial, and she failed to cure the deficiency within the time allotted by the statute. This circumstance "shall disqualify the candidate." Courts are not at liberty to extend, modify, or limit the express and unambiguous terms of a statute. See Hill v. Davis,

4

70 So. 3d 572, 575 (Fla. 2011); see also State v. Chubbuck, 141 So. 3d 1163 (Fla. 2014).

The result in this case is buttressed by the fact that under an earlier version of section 99.061, if a candidate's qualifying check was returned, the candidate was allowed 48 hours after being notified of that fact by the filing officer to pay the fee by cashier's check, "the end of qualifying notwithstanding." See § 99.061(7)(a)1., Fla. Stat. (2010). The operative language of the current statute, which eliminated the possibility of a post-qualifying cure period for candidates for federal, state, county, and district offices, was adopted by the Legislature in a 2011 amendment. See Ch. 11-40, § 14, at 22, Laws of Fla.[2] It is not within a court's power to rewrite the statute or ignore this amendment, and any remedy Levey or others aggrieved by the amendment may have lies with the Legislature, not the courts.

AFFIRMED.

RAY, J., CONCURS; BENTON, J., dissents with opinion.

---

[2] Notably, in the same session law, the Legislature amended section 105.031, governing qualifying for nonpartisan offices, but did not eliminate the 48-hour cure period provided in that law. See Ch. 11-40, § 51, at 56, Laws of Fla.; § 105.031(5)(a)1., Fla. Stat. (2014).

BENTON, J., dissenting.

Among the "others aggrieved" are the voters deprived of the opportunity to cast their votes to decide who will represent them in the Florida House of Representatives from District 113. Yet neither they nor Laura Rivero Levey are at fault in any way or "could," in the words of the order under review, "have done [anything] differently that would have changed what happened during the week of qualifying (June 16-20)."

In conformity with the qualifying statute, Mrs. Levey timely filed everything the statute called for, including "a properly executed check drawn" on her campaign account for $1,781.82, the full amount of the filing fee. § 99.061(7)(a)1., Fla. Stat. (2014). Although her campaign account contained sufficient funds, the bank initially refused to honor the filing fee check because of a hold it alone had decided to place on the account.[*] The bank has since

---

[*] While there was evidence that the bank tried to reach Mrs. Levey to inform her that it had put a hold on a check deposited in her campaign account (and that the check, drawn by the Republican Party of Florida on an account at the same bank, had cleared the Republican Party's account on June 16), there was no evidence that the bank succeeded in reaching her or that she was in any way at fault for the snafu at the bank. As Chief Judge Francis clearly and correctly said at the hearing below, "The candidate [Mrs. Levey] did not do anything wrong. I'll make that clear."

acknowledged that the hold was a mistake on its part and now stands ready to honor the check.

Promptly on being informed of the first check's dishonor when initially presented, Mrs. Levey tendered a second check, this one certified. While it is true that the second, certified check arrived after qualifying had closed—she was not, after all, told there was any problem before the qualifying period had ended—the certified check was wholly superfluous under the facts of the present case. (Incidentally, the Secretary of State has a policy against accepting certified checks except as "cure checks," i.e., a policy not to accept certified checks if tendered initially along with qualifying papers.)

In the present case, there was no need for any "cure check." The check Mrs. Levey originally tendered, which the Secretary of State accepted, has never been returned to her. The State needs only to see that it is presented anew to the now apologetic bank and direct the Supervisor of Elections in Miami-Dade County to let the voters choose between Mrs. Levey and Mr. Richardson.