NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

J.J.,                                    )
                                         )
            Appellant,                   )
                                         )
v.                                       )      Case No. 2D13-2975
                                         )
STATE OF FLORIDA,                        )
                                         )
            Appellee.                    )
                                         )
_____)

Opinion filed October 21, 2015.

Appeal from the Circuit Court for
Hillsborough County; Rex M. Barbas,
Judge.

Howard L. Dimmig, II, Public Defender,
and Richard P. Albertine, Jr., Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Gillian N. Leytham,
Assistant Attorney General, Tampa, for
Appellee.


ALTENBERND, Judge.

          J.J. appeals an order withholding adjudication of delinquency based on

two offenses: delinquent in possession of a firearm in violation of section 790.23(1)(b),

Florida Statutes (2013), and introduction of a firearm into a detention facility in violation

of section 951.22, Florida Statutes (2013).  J.J. also appeals the disposition order to the

extent that it imposed a $100 cost of prosecution.  We affirm the withhold of adjudication as to the offense of delinquent in possession of a firearm but reverse the withhold of adjudication for introduction of a firearm into a detention facility.  We also reverse the disposition order, requiring the trial court to file a new disposition order without an improper cost of prosecution.

## I.  THE FACTS

On February 4, 2013, J.J. was arrested by a school resource deputy on school grounds in Hillsborough County for circumstances unrelated to the offenses in this appeal.  After the deputy conducted a search incident to arrest and found nothing on J.J., the deputy transported J.J. to a Juvenile Assessment Center ("JAC") in Hillsborough County.  Once inside the JAC, the deputy removed J.J.'s handcuffs and instructed J.J. to remove his shoelaces.  When J.J. bent over to do so, a firearm fell from a pocket that had been added to the inside of the jacket.

The State filed a petition for delinquency in which it alleged that J.J. had committed the delinquent acts of delinquent in possession of a firearm, introduction of a firearm into a detention facility, and possession of a firearm on school grounds.  At the disposition hearing, J.J. moved for a judgment of dismissal on all three counts and raised several arguments in support of his motion.  The trial court granted the motion as to possession of a firearm on school grounds but denied it as to delinquent in possession of a firearm and introduction of a firearm into a detention facility.  It found J.J. guilty of committing these delinquent acts and entered the order withholding adjudication.

- 2 -

On appeal, J.J. challenges the trial court's denial of his motion for judgment of dismissal as to both of these delinquent acts. We find no merit to his argument concerning delinquent in possession of a firearm and do not address it here.

## II.  UNDER THE STATUTORY DEFINITION, A JAC IS NOT A "COUNTY DETENTION FACILITY"

Chapter 951 of the Florida Statutes addresses county and municipal prisoners. Under section 951.22(1), "[i]t is unlawful, except through regular channels as duly authorized by the sheriff or officer in charge, to introduce into or possess upon the grounds of any county detention facility as defined in s[ection] 951.23 . . . any firearm . . . ." Section 951.23(1)(a)[1] defines a "county detention facility" as

> a county jail, a county stockade, a county work camp, a county residential probation center, and <u>any other place</u> except a municipal detention facility <u>used by a county or county officer for the detention of persons charged with or convicted of either [a] felony or misdemeanor</u>.

Id. (emphasis added).

J.J. does not contest that he introduced a firearm into a JAC. Instead, he argues that a JAC does not fit the statutory definition of a "county detention facility" for two reasons. First, a JAC is used for assessment of juveniles and not for "detention." Second, a JAC is a facility for juveniles alleged to have committed delinquent acts and not "persons charged with or convicted of either [a] felony or misdemeanor." The State maintains that a juvenile's stay in a JAC is a detention and that a delinquency charge is the equivalent of a felony or misdemeanor.

---

[1]Because the allegedly delinquent act at issue occurred on February 4, 2013, we are applying the version of chapter 951 in effect from July 1, 2010, to September 30, 2013.

Despite J.J.'s challenge that a JAC does not qualify as a "county detention facility" under chapter 951, both J.J. and the State tried this case in the circuit court and briefed this case in this court assuming that a JAC is at least a "county" facility. The parties' assumption that a JAC is a county facility may be questioned, but for purposes of this appeal we too will assume that this JAC was "used by" Hillsborough County and qualifies as a county facility.

Turning to the arguments that were raised, we are inclined to reject J.J.'s first argument that the JAC does not qualify as a "county detention facility" for purposes of section 951.22 because he was brought there not to be detained but to be processed in order to determine whether he would be detained or released. JACs, as physical locations, were established primarily to avoid intermingling children with adults in the central booking process. They "provide collocated central intake and screening services" for juveniles. § 985.135(1), Fla. Stat. (2013). After a juvenile is taken into custody, see § 985.101(1), the juvenile must be "released from custody as soon as is reasonably possible." § 985.115(1). When the juvenile is "charged with . . . an offense that would be a felony if committed by an adult," the juvenile is fingerprinted and photographed, see § 985.11, just like an adult at central booking. In some instances, a juvenile can be held for up to six hours in a separate section of the county jail as part of this process. See § 985.115(3).

A juvenile taken into custody and delivered to a JAC is not free to walk away. Thus, although any period of detention is meant to be relatively brief in most cases, it makes little sense to argue that a juvenile is not in fact detained at such a

- 4 -

center.  But we do not have to answer this question in light of our resolution of J.J.'s second argument.

Under a strict construction of the relevant statutes, a JAC is not a facility used for "persons charged with or convicted of either [a] felony or misdemeanor."  See § 951.23(1)(a).[2]  Many of the young "persons" in a JAC have been "taken into custody" by law enforcement officers who had probable cause to believe that they had committed "a delinquent act or violation of law."  See § 985.101(1)(b).  We assume for purposes of this opinion that this action is sufficient to qualify as a "charge."  But these juveniles are not charged with a felony or a misdemeanor.  A "delinquent act" and a "violation of law" are both defined as "a violation of any law of this state, the United States, or any other state which is a misdemeanor or a felony or a violation of a county or municipal ordinance which would be punishable by incarceration if the violation were committed by an adult."  § 985.03(57).  At least some of these juveniles will eventually be charged as adults for felonies, but that does not occur until after they have been processed at the JAC.  See § 985.15(1).

We have considered whether we could construe this statute to include a JAC.  In everyday parlance, a JAC would seem to be a detention facility.  The special legal terminology used to address offenses committed by children reflects a public policy that recognizes a need to provide more rehabilitation, more second chances, and more empathy for the poor judgment of young minds not fully developed.  But this

---

[2]If a statute actually applies to a JAC, it probably is section 985.711, Florida Statutes (2013).  It may be sensible for the legislature to examine this issue to make sure that some law clearly and unambiguously bars firearms in juvenile assessment centers because those centers obviously need the same protection as other detention facilities.

terminology and the underlying public policy have nothing to do with whether people, including adults, ought to be permitted to bring firearms into a JAC. Under a liberal or practical construction, perhaps we could expand the statute to include a JAC.

Under a strict construction, however, in light of the detailed statutory definition that begins with a list of facilities that house adults, we would need, at a minimum, to add a phrase to the statutory definition to include a JAC. Assuming a JAC is actually a county facility, the statute would need to define a "county detention facility" as

> a county jail, a county stockade, a county work camp, a county residential probation center, and any other place except a municipal detention facility used by a county or county officer for the detention of persons charged with or convicted of either [a] felony or misdemeanor <u>or taken into custody for committing a delinquent act</u>.

Although there is little question that a statute should exist that clearly and unambiguously prevents the introduction of weapons into a JAC, we conclude that we have no authority to add this language to this statute. It is a fundamental principle of Florida jurisprudence that penal statutes must be strictly construed. <u>State v. Chubbuck</u>, 141 So. 3d 1163, 1170 (Fla. 2014); <u>see also</u> § 775.021(1), Fla. Stat. (2013) ("The provisions of th[e] [Florida Criminal] [C]ode and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused."); <u>see also</u> <u>M.A.M. v. Vurro</u>, 2 So. 3d 388 (Fla. 2d DCA 2009) (strictly construing a juvenile delinquency statute). Accordingly, we reverse the withhold of adjudication for introduction of a firearm into a detention facility.

### III. THE COST OF PROSECUTION

Concerning the $100 cost of prosecution, the State correctly concedes that this cost could not be imposed pursuant to section 938.27, Florida Statutes (2013). See D.A. v. State, 11 So. 3d 423, 424 (Fla. 4th DCA 2009) (holding that it was error to impose the cost of prosecution pursuant to section 938.27, Florida Statutes (2007), which applies to "convicted persons" in "criminal cases," because a juvenile who has been adjudicated delinquent has not been "convicted" and is not a "criminal").[3]  Thus, we reverse the disposition order; on remand the trial court must file a new order without the improper cost.[4]

Affirmed in part, reversed in part, and remanded.


LUCAS, J., Concurs.
KELLY, J., Concurs in result only.

---

[3]The legislature has since amended section 985.032, Florida Statutes (2013), to provide that "[a] juvenile who has been adjudicated delinquent or has adjudication of delinquency withheld shall be assessed costs of prosecution as provided in s[ection] 938.27."  But this amendment did not take effect until July 1, 2013, see 13-112, § 3, at 1487, Laws of Fla., which was after J.J. committed the offenses on February 4, 2013, and thus it is inapplicable here.  See Hayden v. State, 753 So. 2d 720, 721 (Fla. 2d DCA 2000) (holding that the trial court erred in assessing costs for the juvenile assessment center and Teen Court Program because the statute authorizing those assessments was enacted after the date of the juvenile's offenses).

[4]In fairness to the trial court, on February 27, 2014, it attempted to correct this error by entering a revised disposition order that did not impose the $100 cost of prosecution.  Unfortunately, J.J. had filed his notice of appeal on June 18, 2013, and thus the trial court did not have jurisdiction to enter the corrected order.  The trial court undoubtedly did not respond to the subsequently filed motion to correct the disposition error pursuant to Florida Rule of Juvenile Procedure 8.135(b)(2) because it thought it already had corrected this error.